(No. 4892- )

Lissie Rains, Administrator of the Estate of Marilyn Rains, Deceased; Robert Waggoner, A Minor, by Lyndel K. Waggoner, His Father and Next Friend; Guy Matson, A Minor, by Astrid Matson, his Mother and Next Friend; Mary Ellen Gore, A Minor, by Lincoln Gore, her Father and Next Friend; and, Lyndel K. Waggoner, Claimants, vs. State of Illinois, Respondent.

*Opinion filed May 11, 1965.*

Leonard J. Dunn and James A. Dooley, Attorneys for Claimants.

William G. Clark, Attorney General; Lee D. Martin, Assistant Attorney General, for Respondent.

Pezman, J.

On November 20, 1959, claimants filed their verified complaint in this Court. It consists of five counts, being a separate count for each individual claimant.

There appears to be no serious dispute of facts concerning the accident in question. The facts appearing from the evidence offered herein are as follows: On June 13, 1959, at about 12:30 A.M., claimant, Robert Waggoner, was driving a 1953 Dodge, 4-door automobile, which was owned by his father, (claimant, Lyndel K. Waggoner) in a southerly direction on Illinois State Route No. 45 in an area known as LaGrange Road. At 71st Street and LaGrange Road, claim-

ant, Robert Waggoner, stopped at a stop light estimated to be about seven blocks north of a bridge known as Canal Bridge, over which said Route No. 45 passes in Willow Springs, Cook County, Illinois. Illinois State Route No. 45 was at the time of the collision a four lane highway, with two lanes for southbound traffic and two lanes for northbound traffic. However, at the time of the collision in question, there was a repair zone extending about one-half mile in length involving the two inner traffic lanes approaching the said Canal Bridge. On the night in question, the two middle lanes of the bridge were in the repair zone, and were sealed off at both the north and south ends by barricades, thus permitting the two outer lanes to be open for traffic, creating one lane traffic in a north and south direction as to the outside lanes.

After stopping at the traffic signal aforesaid, claimant, Robert Waggoner, proceeded south in the inside lane of traffic, and continued in this lane to the place of the accident. Claimant, Robert Waggoner, testified that an automobile moved up along his right side, and drove along his right side to the place of the accident; that he was unable to turn into the outer or right-hand lane as the other automobile was too close to him at all times; and, that he did not have room to move into the outer lane.

As claimant approached the repair zone in question from the traffic signal at 71st Street and LaGrange Road, there were signs placed along the side of the highway as follows, and in the following order: A sign 36 inches square bearing the legend "Road Repairs Ahead, Please Drive Carefully;" a sign 3 feet by 3 feet bearing the legend "One Bridge Lane;" a sign 24 inches high and 18 inches wide bearing the legend "Keep to the Right;" a sign 3 feet by 3 feet bearing the legend "One-Way Traffic;" and a sign 42 inches wide and 20 inches high bearing the legend "Barri-

cade Ahead." These signs commenced approximately 1,000 feet from the bridge construction area, and were located approximately 200 feet apart going toward the bridge in a southerly direction. They were erected about 18 to 24 inches from the edge of the pavement.

To channel the traffic into the single lane across the bridge, which would be the outer lane, rubber cones were used as markers. These were held down by concrete blocks to prevent them from being displaced. The blocks, which were ordinary concrete building blocks, were used in their natural color, which color was approximately the same color as that of the highway. There was no illumination on the blocks or the cones, and no overhead lights illuminating the area. It was stipulated that the State of Illinois was in full supervision and control of the construction. David Guard, a construction foreman for the Division of Highways, State of Illinois, testified that he supervised the installation and traffic protection system set up around where construction work was in progress on State Highways, and that rubber cones were used as markers to channel traffic into the single bridge lane, because they were soft, and would not damage the cone or the car, if hit.

As claimant, Robert Waggoner, approached the bridge in question, he was driving his vehicle at a speed between 40 and 50 m.p.h. Riding in the front seat with him was claimant, Mary Ellen Gore, and riding in the back seat was claimant, Guy Matson, and the decedent, Marilyn Rains. At a point approximately 200 feet from the barricade, which was placed north of the bridge in question, and which sealed off the inner lane, claimant, Robert Waggoner, still driving in the inner traffic lane, struck a concrete block with the left front wheel of his vehicle. The impact blew out the left front tire, and caused the automobile to go out of control and strike the bridge railing. As the automobile struck the

bridge railing, the doors came open, and claimant Gore and said Marilyn Rains were thrown onto the pavement. Claimant Matson had his foot hooked under the back seat, and his body hung out of the door, as the vehicle proceeded onward. Claimant, Robert Waggoner, remained in the automobile until it came to a halt.

As a result of the accident, the evidence reveals injuries and damages as follows:

Marilyn Rains was critically injured, and died on June 20, 1959, eight days after the accident. Respondent stipulated that the accident was the cause of her death. Marilyn Rains left surviving her father and her mother, the latter, Lissie Rains, being appointed as Administrator of her estate. The evidence reveals that Marilyn Rains was 17 years of age, a bright, alert girl who had been an excellent student, and was already registered in college for the following Fall term. She had worked for periods of six months in drive-in theaters and restaurants. She had performed services around her home for both parents, and was to have commenced work at a mail order house the Monday after the accident in question. With monies she earned, she contributed to the support of the family. Her father worked as a barber, and her mother worked in a dress factory. Lissie Rains, as the representative of the estate, claims damages in the sum of $25,000.00.

Mary Ellen Gore, aged 17 at the time of the accident, suffered a brain concussion, and the evidence reveals, through the testimony of her physician who had known her since she was six years old, that she also suffered a traumatic neurosis, which condition the physician described to be permanent. Claimant Gore testified that she is afraid to drive at night, cries a great deal, has difficulty remembering things, and is more irritable than before the accident. Her doctor bill, as a result of the accident, was $50.00. She claims

damages through her father, as next friend, in the sum of $25,000.00.

Guy Matson was treated at the hospital after the accident, and then released. No physician testified as to his injuries. Claimant Matson testified that a doctor told him that a nerve in his back had probably been injured, but that eventually it would go away. He further testified to pain for two or three days after the accident, and stated that his back bothered him when lifting. He further testified that his hair had been falling out since the accident. His medical bills, including X-Rays and drugs, totaled $47.69. He claims damages through his mother, as next friend, in the sum of $25,000.00.

Lyndel K. Waggoner, father of Robert Waggoner, was the owner of the automobile involved in the accident. The evidence shows that a bailment relationship existed between the owner and driver of the automobile at the time of the accident. Lyndel K. Waggoner testified that his car was a total loss, and that the fair cash market value of the car was approximately $300.00. Claimant, Lyndel K. Waggoner, also makes claim for an ambulance bill for $28.00, and doctor and X-Ray bills in a total amount of $65.00 for his son, Robert Waggoner.

Robert Waggoner received a mild compression fracture of the fifth vertebra. There was evidence that the condition caused pain and limitation of movement of the spine, and also the amount and type of work that claimant could do. He was treated at a hospital after the accident, and then released. His total medicals, including X-Rays, amounted to $55.00. He claims damages through his father, as next friend, in the sum of $25,000.00.

It was stipulated between the parties that none of the claimants in this cause received any money or compensation

from other sources, nor is there any claim pending before any other Court on behalf of any of the claimants.

Claimants contend that respondent was guilty of negligence, which proximately caused the injuries and damages, and that they were not guilty of contributory negligence.

Respondent contends that it was not negligent, that it discharged its duties toward claimants by erecting five large, illuminated, reflectorized signs warning of the particular danger, and that claimant's failure to see the signs was the sole and proximate cause of the accident.

The Court finds that the primary issues are as follows:

Was respondent guilty of negligence in maintaining the repair zone in question?

Was the negligence of respondent, if any, the proximate cause, or a proximate contributing cause of the injuries and damages suffered by claimants?

Were claimants, or any one of them, guilty of contributory negligence at the time and place in question?

Was the negligence of any claimant, or claimants, a proximate contributing cause of the injuries and damages sustained by claimants?

From the evidence in this case, it is clear that the State violated its duty by placing concrete blocks approximately eight inches high and six inches thick upon the highway in question, using said blocks in their natural color and without any illumination. A State employee testified that the blocks were used to hold down the rubber cones, which in turn were used to channel the traffic into a single lane. The cones were used because they were soft, and would not damage an automobile when struck. The State apparently knew that the concrete blocks were likely to be struck by motorists, as a State employee testified that it was necessary to replace

at least fifty or sixty concrete blocks, which were broken up by traffic during the three month period of construction. The State, at the time of the accident, had no one assigned to make periodic checks to see if the concrete blocks were in place, and had apparently left the repair zone unattended until the Monday following the accident in question. A State witness, Mr. Guard, admitted that some peril existed in placing concrete blocks upon the highway, but attempted to excuse this act by saying that it was the best thing available to hold down the rubber cones. This does not in any way discharge the duty owed by the State to motorists on the highway. The automobile in question struck one of the concrete blocks, which was placed upon the highway by respondent, before it went out of control. The proof indicates negligence on the part of respondent, which was the proximate contributing cause of the accident in question.

The evidence further shows that claimant, Robert Waggoner, was guilty of contributory negligence proximately contributing to the cause of the injuries and damages in question, and he is barred from recovery against the State. (*Bloom* vs. *State of Illinois*, 22 C.C.R. 582.)

Claimant, Robert Waggoner, drove approximately 1,000 feet, and passed five warning signs without seeing them. Yet, he testified that he was watching the road during this period. It would appear from the evidence that these signs were within his range of vision. The law charges a person with the duty of seeing that which is clearly visible and within his range of vision. (*Dickinson* vs. *Rockford Van Orman Hotel Co.*, 326 Ill. 686.) Robert Waggoner obviously failed to keep a proper lookout for traffic signs placed along the highway. This negligence on his part contributed to cause the accident in question.

The evidence shows that the claimant passengers and the claimant owner of the damaged automobile were free

from contributory negligence. There can be no contributory negligence in the contemplation of the law where there is an exercise of ordinary and reasonable care. (*Lasko* vs. *Meier*, 394 Ill. 71.) It is not seriously contended in this cause by respondent that there is any lack of due care on the part of claimants other than Robert Waggoner, nor is there any evidence of their lack of due care in the record.

The driver, Robert Waggoner, had complete control over the operation of the vehicle in question, and his negligence cannot, of course, be imputed to the guest passengers. (*Lasko* vs. *Meier*, 394 Ill. 71.) Permissive use by a son of his father's car creates a bailor-bailee relationship between Lyndel K. Waggoner and his son, Robert. The negligence of Robert is not imputable to his father. (*Gilman* vs. *Lee*, 23 Ill. App. 2d 61.) Lyndel K. Waggoner may, therefore, recover for damages to his automobile. As to damages expended for medicals claimed to be expended for his son, Robert Waggoner, it appears that in Count II, Par. 10 of the complaint filed herein, that Lyndel K. Waggoner has set over and transferred any right to recover for said medicals to his son, Robert Waggoner, and this claim is considered under Robert Waggoner's claim for injuries.

From a consideration of all the facts in the case, we find:

1. That respondent was guilty of negligence, which was a proximate contributing cause of the injuries and damages in question.

2. That the claimant driver, Robert Waggoner, was guilty of contributory negligence, which proximately contributed to the cause of the accident in question.

3. That the other claimants in this cause were free of any contributory negligence, which was a proximate cause of the injuries and damages in question.

The duty of the State to motorists using public highways under its control is to exercise ordinary care to keep them reasonably safe for such use, or to warn of unsafe conditions existing. (*Rickelman* vs. *State of Illinois*, 19 C.C.R. 54.)

The evidence of damages is not disputed, and we find that damages have been proven by all claimants.

The claim of Robert Waggoner, by Lyndel K. Waggoner, his father and next friend, is, however, denied because of his failure to prove that he was in the exercise of due care for his own safety at the time of the accident.

The claim of Lyndel K. Waggoner for damages to his car is allowed, and an award, therefore, is made to claimant, Lyndel K. Waggoner, in the sum of $300.00.

We find that Guy Matson, formerly a minor, but now of age, suffered damages in the amount of $547.69, and an award, therefore, is made to claimant, Guy Matson, in the sum of $547.69.

We find that Mary Ellen Gore Skvier, formerly a minor, but now of age and married, suffered damages in the amount of $750.00, and an award, therefore, is made to Mary Ellen Gore Skvier, in the sum of $750.00.

Lastly, we find that the claim of Lissie Rains, as Administrator of the Estate of Marilyn Rains, deceased, be allowed to the extent of $14,000.00, and an award, therefore, is made to claimant, Lissie Rains, as Administrator of the Estate of Marilyn Rains, deceased, in the amount of $14,000.00.